331 A.2d 406

COMMONWEALTH of Pennsylvania

v.

Daniel DAVIS, Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 18, 1974.

Decided Jan. 27, 1975.

Gilbert E. Toll, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Daniel Davis, was tried by a judge sitting without a jury and was found guilty of murder in the second degree. Post-trial motions were denied and appellant was sentenced to two (2) to ten (10) years' imprisonment. This appeal followed.

Appellant's conviction arose out of the homicide of one Hubie Lee Baker, who was shot to death on October 20, 1972, in Philadelphia.

Appellant argues that his confession, which led to his conviction, was the product of an admission obtained in a custodial interrogation which was not preceded by the proper *Miranda* warnings; and that his subsequent confession must, therefore, be suppressed as being the fruit of the poisonous tree. The facts surrounding appellant's initial admission and the subsequent confession are as follows: Shortly after the murder of Hubie Lee Baker, the Philadelphia police spoke to Rena Miller, the girl-friend of the decedent and an acquaintance of the appellant. She told the police that appellant was at her apartment on the night of the Baker killing (the Miller apartment is within a city block from where the homicide took place). She also told the police that the decedent had gone to her apartment on the night of the murder and demanded money which she owed him. Detective James Curley, who was in charge of the homicide investigation, gave Rena Miller the homicide division telephone number with instructions to have appellant contact him at the

station when she saw him again. Thereafter, the police made several unsuccessful attempts to contact appellant at his residence. In addition to the above facts, the police had information from a neighbor of Rena Miller that the decedent stood in the street near the Miller apartment and yelled to some unknown individual: "Go get your gun. I am not afraid of you"; there is nothing in the record to indicate to whom this threat was made.

On November 6, 1972, appellant appeared at police headquarters, apparently as a result of Rena Miller's telling him that the police wanted to talk to him. After a short conversation with Detective Curley, in which appellant stated that he was in the Miller apartment on the night of the murder, appellant was asked to return the next day because Detective Curley was leaving on another assignment. The following day, November 7, 1972, appellant arrived at homicide division at approximately 5:30 p. m. and waited until 6:10 p. m., when Detective Curley arrived. Detective Curley escorted appellant to a desk in an adjoining room and told appellant that the purpose of the interview was to discuss the Baker homicide. Detective Curley and appellant then engaged in conversation concerning appellant's wait at the police station, during which time Detective Curley asked some preliminary questions dealing with appellant's name, address, age, place of employment and parents' names. Appellant, during this preliminary questioning and at his own volition, stated: "That night Hubie came around and I drove Rena over to a friend of her's house on North 16th Street." Detective Curley then gave appellant his *Miranda* warnings and he was questioned from approximately 6:10 p. m. to 6:40 p. m., during which time he denied involvement in the homicide. Appellant then consented to a polygraph test. However, shortly before the test was to begin, Detective Curley was told that appellant wanted to talk to him. Detective Curley entered the room and appellant admitted the Baker slaying.

After this admission, Detective Curley proceeded to take a second oral statement, which further incriminated appellant. A formal written statement was taken at 12:05 a. m. on November 8, 1972.

The suppression court found, contrary to appellant's contention, that the initial admission which led to the confession was obtained while appellant was not in a custodial interrogation, and, therefore, *Miranda* did not require that he be advised of his rights before the officer spoke with appellant. Assuming *arguendo* that appellant was a suspect and in custody at the time he gave his admission, we are of the opinion that appellant's initial admission was, nevertheless, admissible. It was not given in response to police questions ". . . calculated to, expected to, or likely to elicit an incriminating response, or that [the questions] were asked with an intent to extract or an expectation of eliciting an incriminating statement." *Commonwealth v. Yount*, 455 Pa. 303, 309, 314 A.2d 242, 246 (1974). Rather, it was given in response to preliminary questions, such as age, name and place of employment—questions not within the purview of *Miranda*. See also *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974).

Having decided that appellant's admission was not constitutionally infirm, his contention that his formal confession was the fruit of the poisonous tree must fail.

Judgment of sentence affirmed.

POMEROY, J., filed a concurring opinion.

POMEROY, Justice (concurring).

I concur in the result because, like the suppression hearing judge below, I am satisfied that appellant's first inculpatory statement was made before he was "in custody." See *Commonwealth v. Feldman*, 432 Pa. 428, 248 A.2d 1 (1968).