COMMONWEALTH of Pennsylvania,
Appellee

v.

David GARVIN, Appellant.

Superior Court of Pennsylvania.

Submitted April 23, 2012.
Filed May 30, 2012.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J.,
GANTMAN, J., and FITZGERALD, J.*

OPINION BY STEVENS, P.J.

David Garvin (hereinafter "Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on March 31, 2011, at which time he received an aggregate sentence of six (6) months to twelve (12) months in prison[1] along with two (2) years' reporting probation following his convictions of Prostitution[2] and Criminal Solicitation.[3] Upon our review of the record, we affirm.

The trial court summarized the procedural history and the testimony presented at the suppression hearing as follows:

### STATEMENT OF THE CASE

On September 8, 2010, [Appellant] was arrested and charged with 1) Prostitution pursuant to 18 Pa.C.S.A. § 5902; 2) Promoting prostitution pursuant to 18 Pa.C.S.A. § 5902(b); 3) reckless Endangerment pursuant to 18 Pa.C.S.A. § 2705; and Criminal Solicitation pursuant to 18 Pa.C.S.A. § 902.

Prior to trial, [Appellant] filed an Omnibus Motion to suppress "anything said by [Appellant]" alleging involuntariness of the statements and violation of the right against self-incrimination due to the absence of *Miranda*[4] warnings. On February 16th and 17th, 2011, this [c]ourt presided over the pre-trial suppression hearing. On February 17, 2011, the [c]ourt denied in part and granted in part [Appellant's] motion to suppress. Specifically, the [c]ourt denied suppression of [Appellant's] responses to the routine questions on the medical checklist. The Court granted the motion to suppress [Appellant's] responses to police follow-up questions not listed on the medical form.

Following the suppression hearing, [Appellant] was found guilty of Prostitution pursuant to 18 Pa.C.S.A. § 5902(a)(1) by the Honorable Daniel Anders on February 17, 2011. Prostitution pursuant to 18 Pa.C.S.A. § 5902(a)(1) constitutes a felony in the third degree "if the person who committed the offense knew that he or she was human immunodeficiency virus (HIV) positive". Additionally, [Appellant] was found guilty of Criminal Solicitation pursuant to 18 Pa.C.S.A. § 902(a)(1)(iv). [sic]

On March 31, 2011, [Appellant] was given a mitigated sentence by Judge Anders of six (6) to twelve (12) months in county prison on the charge of Prostitution followed by two years['] reporting probation. The Criminal Solicitation charge was merged with the Prostitution charge for sentencing purposes. Immediate parole was granted.

On April 20, 2011, [Appellant] filed the instant appeal to the Superior Court of Pennsylvania. The sentencing court filed and served on [Appellant] an Order

---

* Former Justice specially assigned to the Superior Court.

1. The sentencing court granted Appellant immediate parole.

2. 18 Pa.C.S.A. § 5902(a).

3. 18 Pa.C.S.A. § 902(a).

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file and serve a Statement of Errors Complained of on Appeal, within twenty-one days of the Court's Order. In his Statement of Errors Complained of on Appeal, filed May 16, 2011, and served on the trial judge, Appellant raises one issue contending;

"a. The court erred in denying suppression of [A]ppellant's statements where [A]ppellant had not received *Miranda* warnings and made the statements in response to police questioning that was reasonably likely to elicit incriminating responses." [FN1]

## EVIDENCE AT SUPPRESSION HEARING

Officer Joseph Ferrero, the undercover officer solicited by [Appellant], testified that on the evening of September 8, 2010, at approximately 6:55 p.m., [Appellant] was arrested for "prostitution violations". (N.T. 2/16/2011, pg.6). Upon arrest, [Appellant] was transported to the 6th Police District for processing. Inside the 6th District processing area, Officer Ferrero assisted his partner, Officer Blackburn, in preparing routine booking forms necessary to process [Appellant]. Specifically, Officer Ferrero helped prepare "the detainee's medical checklist", form 75–605, by reading the questions on the form while Officer Blackburn wrote down [Appellant's] responses. In addition, to the medical checklist, Officer Ferrero was also "preparing the original 48, which is basically the police report" and the 75–229 which contains [Appellant's] biographical information. (N.T. 2/16/2011, pg.12)

Officer Ferrero read the medical questions aloud to [Appellant] directly from the "Detainee's Questionnaire". (N.T. 2/16/2011, pg.8) Question number seven asks "Are you receiving any type of treatment?" to which [Appellant] responded, "Yes". (N.T. 2/16/2011, pg.9) Officer Ferrero stated that he did not immediately ask [Appellant] any follow-up questions to his response. [Appellant], however, volunteered additional information by stating he was receiving treatment for "HIV and thyroid disorder" which were written down in the remarks portion of the medical form. (NT. 2/16/2011, pg.9)

After [Appellant] disclosed his HIV status, Officer Ferrero asked "You knew you had HIV, and you were going to have sex with me anyway?" and "Do you know that's how HIV is spread?" (N.T. 2/16/2011, pg.10) [Appellant] responded "Yes" to both questions. (N.T. 2/16/2011, pg.10) Officer Ferrero acknowledged these questions were not part of the medical form.

Officer Ferrero testified that the Detainee's Medical Checklist, 75–605, is a standard form used in the booking process, along with the 75–48 and 75–229, which is "prepared for everyone" arrested. It applies to every person equally regardless of the offense, "anywhere from a summary to a felony this is prepared for everyone". (N.T. 2/16/2011, pg.11) Officer Ferrero further testified that the questions on the form were "designed so that we could basically get whatever detainee medical treatment they need, if they need it at the time". (N.T. 2/16/2011, pg.20)

---

FN1 On June 15, 2011, [Appellant] informed the trial judge that he would not be filing a supplemental 1925(b) statement. On July 13, 2011, the trial judge forwarded this file to the motion judge to prepare this Opinion.

Trial Court Opinion filed, 8/4/11 at 1–4.

■ Appellant filed a timely notice of appeal on April 20, 2011. On April 25,

2011, the trial court directed Appellant to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 16, 2011, Appellant complied. Also on that date, Appellant filed a Request for Extension of Time to File a Supplemental Statement of Errors Upon Receipt of All Notes of Testimony wherein he requested that the trial court grant him an additional twenty-one (21) days in which to file a supplemental statement upon the receipt of the transcripts. The trial court granted Appellant's petition, though Appellant did not file a supplemental statement.[5]

In his brief, Appellant presents the following issue for our review:

> Did not the lower court err in failing to suppress statements made by [A]ppellant in response to custodial interrogation, where the interrogating officer knew or had reason to know that the questions, though biographical in nature, were reasonably likely to elicit an incriminating response?

Brief for Appellant at 3. The Commonwealth has not filed a brief.[6]

Our Supreme Court recently set forth the well-settled standard of review of a suppression ruling as follows:

Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. *Commonwealth v. Mistler*, 590 Pa. 390, 396, 912 A.2d 1265, 1268 (2006). When it is the defendant who appeals an adverse suppression ruling, we may consider only the evidence presented for the Commonwealth and that of the defense which remains uncontradicted when fairly read in the context of the entire record. *Commonwealth v. Pruitt*, 597 Pa. 307, 325, 951 A.2d 307, 317 (2008). We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo*. *Commonwealth v. Snyder*, 599 Pa. 656, 664, 963 A.2d 396, 400 (2009).

*Commonwealth v. Briggs*, 608 Pa. 430, 12 A.3d 291, 320–21 (2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 267, 181 L.Ed.2d 157 (2011).

18 Pa.C.S.A. § 5902 reads as follows:

**§ 5902. Prostitution and related offenses**

---

5. We caution Appellant that this Court has found claims waived on appeal for failure to specify the error alleged. *See Commonwealth v. Rolan*, 964 A.2d 398, 409–10 (Pa.Super.2008); *see also Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) ("[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all. The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised.") (citation and internal quotation marks omitted). Herein, in his Rule 1925(b) statement, Appellant generally claimed the suppression court erred in failing to suppress "Appellant's statements;" however, Pa.R.A.P. 1925(b)(4)(v) provides that "[e]ach error identified in the

Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court[.]" In his brief, Appellant refers to statements he made to police which he characterizes as biographical in nature. As this information comprises part of his overall statements made to police, we will consider the merits of the issue he develops in his brief.

6. On January 18, 2010, the Commonwealth filed its Application for Extension of Time to File Brief–First Request. In a *Per Curiam* Order entered on January 20, 2010, a panel of this Court granted the request and in a comment thereto added that the brief would be due March 19, 2012, and no further extensions would be granted.

(a) **Prostitution.**—A person is guilty of prostitution if he or she:

(1) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or

(2) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity.

(a.1) **Grading of offenses under subsection (a).**—An offense under subsection (a) constitutes a:

(1) Misdemeanor of the third degree when the offense is a first or second offense.

(2) Misdemeanor of the second degree when the offense is a third offense.

(3) Misdemeanor of the first degree when the offense is a fourth or subsequent offense.

(4) Felony of the third degree if the person who committed the offense knew that he or she was human immunodeficiency virus (HIV) positive or manifesting acquired immune deficiency syndrome (AIDS).

18 Pa.C.S.A. § 5902.

■■■ In addition, we note that not every statement made by an individual during a police encounter constitutes an interrogation. *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa.Super.2008). *Miranda* rights are required only prior to a custodial interrogation. *Commonwealth v. Housman*, 604 Pa. 596, 986 A.2d 822, 839 (2009), *cert. denied*, —— U.S. ——, 131 S.Ct. 199, 178 L.Ed.2d 120 (2010). "Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way.'" *Commonwealth v. Gonzalez*, 979 A.2d 879, 887–88 (Pa.Super.2009), quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Furthermore, volunteered or spontaneous utterances by an individual are admissible without the administration of *Miranda* warnings. *Id.* See also, *Commonwealth v. Cornelius*, 856 A.2d 62, 75 (Pa.Super.2004), *appeal denied*, 586 Pa. 755, 895 A.2d 548 (2006). "When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression.... Interrogation is police conduct 'calculated to, expected to, or likely to evoke admission.'" *Commonwealth v. Brown*, 551 Pa. 465, 711 A.2d 444, 451 (1998) (citations omitted); *Commonwealth v. Bess*, 789 A.2d 757, 762 (Pa.Super.2002).

■■■ In *Commonwealth v. Sepulveda*, 579 Pa. 217, 855 A.2d 783, 796–797 (2004) (Castille concurring), *cert. denied*, 546 U.S. 1169, 126 S.Ct. 1330, 164 L.Ed.2d 47 (2006) our Supreme Court stated, *inter alia*, that a statement made in a custodial setting would not be suppressed where the suspect "spontaneously 'blurts out' the statement, ... or makes an incriminating statement in the course of 'small talk' with authorities, ... or is merely responding to biographical questioning,...." (internal citations omitted). "Generally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings since it is not information generally considered as part of an interrogation." *Commonwealth v. Jasper*, 526 Pa. 497, 587 A.2d 705, 708–709 (1991). Such questions are not "calculated to, expected to, or likely to elicit an incriminating response, or ... asked with [the] intent to extract or an expectation of eliciting an incriminating [response]." *Commonwealth v. Davis*, 460 Pa. 37, 331 A.2d 406, 407 (1975), quoting *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242, 246 (1974); *Commonwealth v. Bey*, 294 Pa.Super. 229, 439 A.2d 1175, 1180 (1982). Also, there is no require-

ment that a suspect be advised of any *Miranda* rights where the police seek biographical, general information for completion of a Form 75–229. *Commonwealth v. Friedman,* 411 Pa.Super. 628, 602 A.2d 371, 378 (1992), *appeal denied,* 532 Pa. 650, 615 A.2d 340 (1992) citing *Jasper, supra.*

In *Jasper,* our Supreme Court set forth the following, relevant analysis:

> The Appellant was asked several questions, including whether he owned a vehicle, in order to complete a form identified as 75–229. In response to the inquiry, the Appellant indicated that he did own a 1974 blue Audi. It is this response that Appellant argues should have been suppressed and trial counsel's failure to do so resulted in ineffectiveness. Appellant argues that disclosure of this information was critical in that another Commonwealth witness identified the 1974 blue Audi as parked near the crime scene on the date of the killing.

> At the post[-]verdict hearing, trial counsel testified that he believed such statement was not suppressible given that the information sought was "biographical". The Commonwealth argued successfully that the information received was nothing more than general information in response to a form and as such did not require the *Miranda* warnings. We agree. Generally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings since it is not information generally considered as

part of an interrogation. *Miranda* warnings are required when a suspect is in custody and subjected to interrogation. *Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513 (1988), *cert. denied, Yarris v. Pennsylvania,* 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989), *Commonwealth v. Bracey,* 501 Pa. 356, 461 A.2d 775 (1983), and *Commonwealth v. Davis,* 460 Pa. 37, 331 A.2d 406 (1975). In this instance, the interrogation had not yet begun; therefore *Miranda* warnings were not required.

*Commonwealth v. Jasper,* 526 Pa. 497, 587 A.2d 705, 708–709 (1991).

■ In his brief, though Appellant acknowledges the questions Officer Ferrero posed "sought routine, biographical information," he maintains that the responses thereto were obtained in violation of his right against self-incrimination. Brief for Appellant at 8. Appellant reasons that the information sought by Officer Ferrero was directly relevant to the crime of prostitution and it constituted the sole evidence that elevated the offense from a misdemeanor to a felony. Brief for Appellant at 13. Appellant further asserts that Officer Ferrero's testimony on cross-examination reveals he was aware at the time of the booking that prostitution by an individual infected with the HIV virus increases the grading of the offense from a misdemeanor to a felony and that he knew his questioning was "reasonably likely to elicit an incriminating response." Brief for Appellant at 15–16.[7]

At the suppression hearing, Officer Ferrero testified he asked Appellant questions

---

7. When the trial court asked Appellant's counsel at the suppression hearing whether a case existed "in Pennsylvania that says where someone has been arrested for prostitution, this checklist can't be filled out until they have been given *Miranda* Warnings[,]" counsel responded "No." N.T., 2/16/11 at 24. The suppression court instructed counsel she would have until the next morning to find caselaw on point, if it existed, after which trial would commence. *Id.* at 27. There is no indication in the record that counsel uncovered such a case.

while his partner, Officer Blackburn, physically completed the detainee's medical checklist, form 75–605, on September 8, 2010. N.T., 2/16/11, at 6–7.[8] Officer Ferrero explained that the left side of the form entitled "Visible Check" requires the officer to make certain observations and independently answer several questions, while the right side, entitled "Detainee's Questionnaire" requires an officer to record the detainee's responses to specific questions. Officer Ferrero detailed his interaction with Appellant in this regard as follows:

> **Officer Ferrero:** [The] first question is "Are you presently taking any medication?" It's checked "Yes." And then underneath where it says "Remarks," there is a number 1, and that's the answer that he gave "Sustiva."
>
> Number 2, the question is "Have you ever been arrested before?" The answer is, "No." Question Number 3 is, "Have you ever tried to kill yourself or harm yourself?" The answer is "No."
>
> **The Court:** Where are you getting the questions from?
>
> **[Officer Ferrero]:** Right here, on the right side.
>
> **The Court:** "Detainee's Questionnaire."
>
> **[Officer Ferrero]:** That's correct.
>
> **The Court:** Okay.
>
> **[Officer Ferrero]:** Number 4, "Are you contemplating harming yourself

now?" It's checked "No." Number 5, "Do you have any serious mental or medical problems?" He answered "No." "Do you have diabetes?" "No." "Are you receiving any type of treatment?" He answered, "Yes." "At that time [he] answered that he was getting treatment for HIV in the "remarks" portion, and thyroid disorder. At that time he was asked, "Is there anything else you would like to inform us to ensure your well-being?" And he answered, "No."

*Id.* at 8–9. Officer Ferrero admitted to asking Appellant follow up questions which were not on the form after Appellant revealed he was HIV positive. *Id.* at 10–11.

Officer Ferrero, who has been a police officer since 1995, explained he has routinely prepared the detainee medical checklist for every prisoner who comes into the district, regardless of the crime for which he or she has been arrested. *Id.* at 10–11. He also indicated that several other forms, including the original 48 (the police report) and the 75–229 form (biographical information) are prepared in the processing area. *Id.* at 12. When he asked Appellant the question concerning medical treatment, Officer Ferrero was not attempting to discern whether Appellant was HIV positive so that he could charge him with a felony. *Id.* at 18.

On cross-examination, Officer Ferrero indicated an individual may refuse to answer the questions on the checklist and

---

**8.** Though Appellant attached a copy of a form titled "Detainee's Medical Checklist" as "Exhibit "C" to his brief, the only legible checkmark under the portion titled "Detainee's Questionnaire" appears next to the query "Are you presently taking any medication," which was the first question. Appellant has failed to ensure the original completed checklist was provided for our review in the certified record, though it is his duty to ensure that the record forwarded to this Court contains all documents necessary to allow a complete and judicious assessment of the issues he has raised on appeal. Moreover, for purposes of appellate review, what is not in the certified record does not exist. *See Commonwealth v. Wint,* 730 A.2d 965, 967 (Pa.Super.1999). Nevertheless, as we are able to glean the questions and responses from the checklist which are relevant to our inquiry from Officer Ferrero's testimony, we will not find waiver for Appellant's failure to ensure we received a complete record.

that he had not read Appellant his *Miranda* warnings prior to asking them. *Id.* at 16. He also stated he knew that an individual who commits prostitution while HIV positive can be charged with a felony. *Id.* at 16–17. He further testified that when Appellant indicated he had been receiving treatment, Officer Ferrero did not follow-up with a question to discover the type of treatment. *Id.* at 17–18. He explained that the "questions are designed so that we could basically get whatever detainee medical treatment they need, if they need it at the time." *Id.* at 20.

While Officer Ferrero may have been well-versed in the grading of the offense of the crime of prostitution, his testimony does not reveal that he had any reason to suspect Appellant was HIV positive prior to the time he asked the questions on the detainee's medical checklist, nor did he in any way solicit specific information as to the condition for which Appellant was being treated after Appellant indicated he had been under medical care. Appellant stated in response to question number five that he did not have any serious medical problems, and Officer Ferrero did not press him further. Indeed, the only medical condition about which Appellant was specifically questioned was diabetes.

We further note that Appellant's HIV status was not relevant for conviction but only for the grading of the offense. Significantly, the trial transcript indicates that at the outset of the proceeding, an unreported discussion was held at sidebar between counsel and the trial court. Thereafter, the following on the record discussion ensued:

> The court: Mr. Murray, you have a request to amend the bills.
>
> Mr. Murray: Yes, to amend the bills to a misdemeanor of 5902 which is Sub-

section A1. It's just a grading issue, I think it's a lesser included offense. But to be clear we are proceeding a grading of the misdemeanor of the—it's a grading issue.

> Ms. Akers: I agree, Your Honor 5902 Subsection A1 is charged as F3 based on certain evidence that we just stipulated to, but that grade as an M1 would be a lesser included so there's no need to amend the bills for a separate charge of 5902A1.
>
> The court: Okay. All right. Your first witness.

N.T., 2/17/11 at 6–7. Thus, it appears that defense counsel stipulated to the grading of the offense as a third degree felony presumptively in light of Appellant's HIV status. Indeed, no reference to Appellant's HIV status was made at trial, and the judge who presided over it differed from he who served as the suppression and the sentencing court.

In addition, prior to sentencing, defense counsel requested a sentence of "time in to 23 months, followed by two years['] reporting probation." N.T., 3/31/11 at 2.[9] The sentencing court noted on the record that the guidelines indicated a sentence of twelve (12) months to eighteen (18) months, plus or minus six (6) months in prison. *Id.* at 10. The trial court ultimately sentenced Appellant to a lesser prison sentence than he had requested as follows: "what I will impose as a sentence will be the six to 12 months, followed by two years['] reporting probation. That's to be supervised by the mental health unit. I will grant you immediate parole." *Id.*

In light of the foregoing, we find the record supports the suppression court's finding that Appellant's responses to the standard questionnaire were not suppressible and that the medical checklist fell

---

9. Appellant had served four months and three weeks in prison on this case. *Id.*

within the "routine booking exception" such that Appellant was not required to receive *Miranda* warnings prior to responding to questions thereon.

Judgment of Sentence Affirmed.