J-S58003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HENRY CULVER, | |
| Appellant | No. 321 WDA 2013 |

Appeal from the Judgment of Sentence December 13, 2012
in the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0008632-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 1, 2014**

Appellant, Henry Culver, appeals from the judgment of sentence imposed after his jury conviction of murder of the first degree, person not to possess a firearm, firearms not to be carried without a license, terroristic threats, and simple assault.[1]  We affirm.

The trial court set forth the background of this case, as follows:

> The Commonwealth's evidence established that on December 14, 2011, the victim, Scott Goodman, was at the home of his father, Albert Goodman.  The elder Goodman was sitting in his home when he heard an argument coming from the kitchen.  [(**See** N.T. Albert Goodman Trial Deposition (AGTD),

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6105(a)(1), 6106(a)(1), 2706(a)(1), and 2701, respectively.

9/01/11, at 7-8, 11).[2]] He recognized both voices[:] that of his son and that of [Appellant], with whom he was also familiar. [(*See id.* at 9-11).] Mr. Goodman walked into the kitchen and saw [Appellant] shoot his son. [(*See id.* at 13, 52, 54).] [Appellant] then turned to Mr. Goodman and told him to back off or he would be next. [(*See id.* at 16, 61-62).] Mr. Goodman then fled out the front door while [Appellant] left through the back door. [(*See id.* at 16-17, 64-65).]

At approximately the same time that Mr. Goodman was leaving his house, a witness, [Rasheeda[3]] Saxton, was arriving. She saw [Appellant come from the back of the house,] get into his car and drive off. [(*See* N.T. Trial, 9/19/12, at 126-29).] While she was walking toward the Goodman residence, she heard Albert Goodman calling for help and, as she went around to the back, she saw Scott Goodman lying on the ground, bleeding. [(*See id.* at 129-31). [When police arrived on the scene, Ms. Saxton told them that "Hank (meaning Appellant) did this." (*Id.* at 116).] Scott Goodman was taken to the hospital where he eventually died of his wounds.

LaPerry Raymond, the mother of [Rasheeda] Saxton, also testified. [(*See id.* at 181-86).] She said that during that evening, she was on the phone with Scott Goodman. She heard a door slam and Scott told her to hold on. [(*See id.* at 185).] He then told her that it was "Hank" and he would call her back later. [(*See id.*).] A few minutes later, her daughter called and told her that Scott Goodman had been shot. [(*See id.* at 185-86).] . . .

[Detective Kenneth Ruckel of the Allegheny County police department testified that he found a black leather glove with a zipper near the cuff at the scene of the murder. (*See* N.T. Trial,

_____

[2] Because of his his poor health, Albert Goodman's trial deposition was videotaped in advance of trial. He passed away prior to trial, and the jury viewed the videotaped deposition. (*See* N.T. Trial, 9/19/12, at 232-33).

[3] The trial court spells Ms. Saxton's first name as "Rashida," however a review of the notes of testimony reveals that the proper spelling is "Rasheeda." (*See* N.T. Trial, 9/20/12, at 123). For the sake of consistency, we will spell Ms. Saxton's first name as "Rasheeda."

9/18/12, at 42). A dark brown glove that was inside the black one as though the two were worn together contained Appellant's DNA. (**See** N.T. Trial, 9/20/12, at 287).]

The Commonwealth also presented evidence concerning [Appellant's] arrest sometime later in Miami. . . .

\* \* \*

After receiving a tip as to where [Appellant] might be found, Deputy US Marshal[] Ty Fallow and others went to this location [at a rescue mission in Miami, Florida]. [(**See id.** at 207-09, 222).] They observed [Appellant] and Marshal[] Fallow addressed [him], "Mr. Culver, Hank, Henry." [(**Id.** at 212).] At this point, [Appellant] turned around. [(**See id.**).] Later, as they were asking him his name, he told them that his name was Rocky Wallace. [(**See id.**).] He showed them an ID [from the rescue mission] that bore the name Rocky Wallace but had his photograph on it. [(**See id.** at 212-13).] [Appellant] was [detained] and transported to the Dade County Jail [where fingerprint analysis confirmed that he was Henry Culver and he was then arrested]. [(**See id.** at 213; N.T. Trial, 9/20/12, at 253).] He was in a holding cell for a lengthy time as he waited his turn to be processed. The defendants' names are called out frequently. Marshal[] Fallow observed that on all but one occasion when the jail called out for Henry Culver, [Appellant] did not respond. [(**See** N.T. Trial, 9/19/12, at 213-16).] Once, however, when a nurse called the name Henry Culver, he did verbally respond. [(**See id.** at 215-16).]

Marshal[] Fallow also testified that he was present when [Appellant] was provided with several intake forms including a property form. [(**See id.** at 219-20).] This form itemizes the property that was on his person when he was arrested. [(**See id.**).] It has a place for the inmate's signature. Marshal[] Fallow observed [Appellant] sign the name Rocky Wallace to that form. [(**See id.** at 220).] [The Commonwealth] introduced [the document] into evidence at trial. [(**See id.**).]

(Trial Court Opinion, 1/17/14, at 3-4, 5).

Appellant's counsel moved to suppress any testimony regarding

Appellant's refusal to acknowledge his name. (**See id.** at 248). The trial

- 3 -

court ruled that all statements made by Appellant prior to having been read his *Miranda*[4] rights would be excluded, but that the property intake form that Appellant signed after his rights had been read to him was admissible. (*See id.* at 248-49). The trial court instructed the jury that it was to disregard any statements made by Appellant prior to being given his *Miranda* warnings, but could consider whether or not he signed the property intake form using a fraudulent name. (*See id.* at 250-51).

At the conclusion of trial, the jury convicted Appellant of the aforementioned charges. On December 13, 2012, the court sentenced Appellant to a term of life in prison without the possibility of parole on the murder of the first degree conviction, plus a concurrent aggregate term of imprisonment of not less than nine and one-half nor more than nineteen years on the remaining counts. The court denied Appellant's post-sentence motions on January 17, 2013. Appellant timely appealed.[5]

Appellant raises two questions for this Court's review:

> I. Did the trial court err in failing to suppress evidence that [Appellant] signed a different name on a property inventory form when he was booked in jail considering [Appellant] had invoked his right to remain silent and the question, which asked for his name, was calculated to elicit an incriminating response?

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5] On May 7, 2013, Appellant filed a timely statement of errors complained of on appeal pursuant to the court's order. *See* Pa.R.A.P. 1925(b). The court filed an opinion on January 17, 2014. *See* Pa.R.A.P. 1925(a).

II. Did the trial court abuse its discretion in denying [Appellant's] post[-]sentence motion that the verdict was against the weight of the evidence where the three witnesses who implicated [Appellant] in the shooting provided entirely inconsistent and contradictory accounts of the incident, the witnesses' statements and actions immediately after the incident suggested they were covering up what actually occurred, the prosecution provided only a contrived and far-fetched motive for the shooting, and two of the Commonwealth's primary witnesses had a motive to fabricate their accounts of the incident?

(Appellant's Brief, at 6).

In Appellant's first issue, he argues that "[t]he [c]ourt erred in denying defense counsel's motion to suppress evidence that [Appellant] signed the name 'Rocky Wallace' on a property inventory form when he was booked in the Dade County Jail." (*Id.* at 34). Specifically, Appellant claims that "the [trial] court erred in admitting evidence of [his] false signature as it was obtained in violation of his constitutional right against self-incrimination." (*Id.*). We disagree.

Our standard of review of a challenge to a court's ruling on a suppression motion is well-settled:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

In addition, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. The suppression court is also entitled to believe all, part or none of the evidence presented. Finally, . . . the Commonwealth has the burden of establish[ing] by a preponderance of the evidence that the evidence was properly obtained.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045-46 (Pa. Super. 2011) (*en banc*), *appeal denied*, 40 A.3d 120 (Pa. 2012) (citations and quotation marks omitted).

. . . [W]e note that not every statement made by an individual during a police encounter constitutes an interrogation. *Miranda* rights are required only prior to a custodial interrogation. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. Furthermore, volunteered or spontaneous utterances by an individual are admissible without the administration of *Miranda* warnings. When a defendant gives a statement without police interrogation, we consider the statement to be volunteered and not subject to suppression. . . . Interrogation is police conduct calculated to, expected to, or likely to evoke admission.

. . . . [O]ur Supreme Court [has] stated . . . that a statement made in a custodial setting would not be suppressed where the suspect . . . is merely responding to biographical questioning[.] Generally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings since it is not information generally considered as part of an interrogation. Such questions are not calculated to, expected to, or likely to elicit an incriminating response, or . . . asked with [the] intent to extract or an expectation of eliciting an incriminating [response]. Also, there is no requirement that a suspect be advised of any *Miranda* rights where the police seek biographical, general information . . . .

***Commonwealth v. Garvin***, 50 A.3d 694, 698-99 (Pa. Super. 2012) (citations and quotation marks omitted).

In ***Garvin***, the appellant was arrested for prostitution and related charges after soliciting undercover police officer, Joseph Ferraro. ***See id.*** at 695-96. During the booking process, Officer Ferraro was required to obtain information from the appellant in order to fill out a medical checklist. ***See id.*** at 696. Officer Ferraro read the questions on the form to the appellant prior to giving him his ***Miranda*** warnings. ***See id.*** One of the questions was, "Are you receiving any type of treatment?," to which the appellant responded, "Yes," voluntarily indicating he was receiving treatment for HIV. ***Id.*** The appellant moved to suppress his responses, but the court denied his request, and he appealed. ***See id.***

Like Appellant does here, the appellant in ***Garvin*** argued on appeal that the suppression court erred because, Officer Ferraro "knew or had reason to know that the questions, though biographical in nature, were reasonably likely to elicit an incriminating response[,]" thus violating his right against self-incrimination. ***Id.*** at 697; (***see also*** Appellant's Brief, at 34). This Court disagreed, concluding that "the record supports the suppression court's finding that Appellant's responses to the standard questionnaire were not suppressible and that the medical checklist fell within the 'routine booking exception.'" ***Garvin***, ***supra*** at 701-02.

Similarly, here, Appellant signed a standard form during booking at the Dade County Jail. (*See* N.T. Trial, 9/19/12, at 219-20). Marshal Fallow testified that he routinely gives the property intake form to an individual when he enters the jail in order to record the items on his person that will be held by the facility and given back to him when he is released, testimony that was within the sole province of the trial court to believe. (*See id.* at 219-20); *see also Galendez*, *supra* at 1046. Therefore, we conclude that the suppression court did not abuse its discretion when it denied Appellant's motion to suppress the property intake form.[6] *See Galendez*, *supra* at 1045-46. Appellant's first issue does not merit relief.

In Appellant's second issue, he challenges the weight of the evidence to support his conviction. (*See* Appellant's Brief, at 41-54). This issue lacks merit.

Our standard of review of a challenge to the weight of the evidence is well-settled:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when

_____

[6] Moreover, we note that the court properly found that Appellant's use of an alias on the property intake form was relevant to show consciousness of guilt. (*See* Trial Ct. Op., at 6); *see also Commonwealth v. Robinson*, 721 A.2d 344, 352 (Pa. 1998), *cert. denied*, 528 U.S. 1082 (2000) ("Use of an alias has been recognized as evidence of a consciousness of guilt.") (citation omitted).

the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91-92 (Pa. 2014) (citations omitted; emphasis in original).

In this case, Appellant has not argued or demonstrated that the trial court palpably abused its discretion when it denied his motion for a new trial on the basis of the weight of the evidence. He merely argues that the witnesses offered contradictory testimony and suggested a motive for fabricating their stories. (*See* Appellant's Brief, at 41). Thus, Appellant has failed to advance an argument that invokes the appropriate standard of review. *See Morales*, *supra* at 91-92.

Moreover, our independent review of the record reveals that the trial court properly viewed the issue as one of credibility, which the jury was free to resolve in Appellant's favor, and determined that the verdict "did not shock [its] sense of justice." (Trial Ct. Op., at 9). Therefore, we conclude

that the trial court did not palpably abuse its discretion in deciding the weight of the evidence issue, **see Morales**, **supra** at 91-92, and Appellant's second claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2014