J-S57042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KARL CHESTER | |
| Appellant | No. 2445 EDA 2014 |

Appeal from the Judgment of Sentence entered July 14, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005330-2010

BEFORE:  MUNDY, OTT, and STABILE, J.J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 23, 2016**

Appellant, Karl Chester,[1] appeals *nunc pro tunc* from the July 14, 2011 sentence imposing an aggregate five to ten years of incarceration for possession with intent to deliver a controlled substance, unlawful possession of a controlled substance, possession of drug paraphernalia, unlawful possession of a firearm, and possession of an instrument of crime.[2]  We affirm.

The trial court's Pa.R.A.P. 1925(a) opinion sets forth the pertinent facts:

---

[1]  The parties name Appellant "Karl Chester" in their briefs.  The transcripts in the record refer to Appellant as "Carl Chester."

[2]  75 Pa.C.S.A. §§ 780-113(a)(30), (32), and (16); 18 Pa.C.S.A. §§ 6105 and 907, respectively.

On February 23, 2010, Appellant was shot at the intersection of Wayne and Berkley Streets in the Germantown section of Philadelphia; he sustained the gunshot wound in the groin area. Appellant was subsequently transferred by his father's private vehicle to Jefferson Hospital. Officer Alexander Branch testified at trial that he met the Appellant at the hospital when he arrived and recorded the Appellant's address as 5020 Portico Street, Philadelphia, PA 19144, but could not recall whether he was told this address by the Appellant or whether he observed it on the Appellant's driver's license.

On February 24, 2010, a search warrant was executed at approximately 4:10 a.m. for the search of 5020 Portico Street, Search Warrant Number 147636. The search yielded, *inter alia*, shotgun cartridge, an Iver Johnson 38 caliber revolver (serial number 16129), a nine millimeter semiautomatic handgun with a single live round, 38-special cartridges, and 24 green tinted packages containing crack cocaine. The search of the back bedroom produced a shotgun that was underneath the bed, a bulletproof vest that was between the mattress and box spring, and shotgun shells. The clothing in the back bedroom was also searched and in the pockets of a pair of shorts, a white, clear plastic bag and plastic viles [sic] with white caps containing alleged cocaine. Appellant later admitted this crack belonged to him.

Trial Court Opinion, 12/18/14, at 1-2 (record citations omitted).

The trial court, sitting as fact finder, found Appellant guilty of the aforementioned offenses on June 2, 2011. Appellant did not file a direct appeal from his July 14, 2011 judgment of sentence. On April 27, 2012, Appellant filed a timely first petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. The PCRA court entered an order permitting Appellant to file this *nunc pro tunc* direct appeal. Appellant raises two issues for our review:

1. Did the lower court err in failing to grant the motion to suppress the evidence recovered pursuant to a search

warrant as the affidavit of probable cause lacked sufficient facts to sustain the issuance of the search warrant?

2. Did the lower court err in denying the objection to the prosecutor's questioning of the Appellant regarding a statement allegedly made by another not in evidence and by failing to grant the related motion for a mistrial?

Appellant's Brief at 7.

Appellant's first argument challenges the trial court's denial of his suppression motion. We conduct our review as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Potts***, 73 A.3d 1275, 1280 (Pa. Super. 2013).

Appellant argues the affidavit of probable cause was insufficient to support a search of his home at 5020 Portico Street. The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution protect citizens against unreasonable searches of their homes. Instantly, police requested and a magistrate issued a search

warrant for Appellant's home. Appellant argues the affidavit of probable cause in support of the warrant was insufficient.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed.

*Commonwealth v. Smith*, 784 A.2d 182, 185 (Pa. Super. 2001); *See* Pa.R.Crim.P. 203. Probable cause must exist at the time of the warrant, and the magistrate must base its finding of probable cause on facts contained within the four corners of the supporting affidavit. *Commonwealth v. Way*, 492 A.2d 1151, 1153-54 (Pa. Super. 1985). Appellant argues the magistrate could not conclude, based on the affidavit in support of the warrant, that police established a fair probability of finding evidence of a crime at Appellant's home at 5020 Portico Street.

The absence in the record of the affidavit of probable cause hinders our review.[3] An appellant is responsible for ensuring that the certified record contains all items necessary for this Court's review. *Commonwealth v. Garvin*, 50 A.3d 694, 700 n.8 (Pa. Super. 2012); *Commonwealth v.*

---

[3] Our efforts to obtain a copy of the affidavit were unsuccessful, despite the fact both parties and the trial court clearly had a copy of the affidavit and quoted from it.

*Wint*, 730 A.2d 965, 967 (Pa. Super. 1999). "The fundamental tool for appellate review is the official record of what happened at trial, and appellate Courts are limited to considering only those facts that have been duly certified in the record on appeal." *Commonwealth v. Williams*, 715 A.2d 1101, 1103 (Pa. 1998).

Rule 1931 of the Pennsylvania Rules of Appellate Procedure requires the clerk of courts to transmit the complete certified record. Pa.R.A.P. 1931(c). The clerk must also create a list of documents included in the record and provide a list to the parties so that the parties can correct any omissions. *Id.* If the certified record does not contain a listed item, that item's absence will be attributed to a "breakdown in the process of the court" rather than to the appellant's oversight. Pa.R.A.P. 1931(f). Instantly, it appears the clerk numbered the docket items from one through seventeen, but the record contains no list identifying each of those items. Thus, the record does not confirm the clerk provided Appellant with a list in accordance with Rule 1931(c). Under these circumstances, we decline to charge Appellant with waiver due to the missing affidavit.

Fortunately, we discern no meaningful dispute among the parties as to the operative facts in the affidavit of probable cause. The trial court summarized the affidavit as follows:

> The application for the search warrant, comprised of the warrant and affidavit, explains that on February 23, 2010, Appellant's father received a phone call from Appellant's mother, stating that their son had been shot. He then went to

- 5 -

> Appellant's home at 5020 Portico Street and helped dress Appellant, placed him in his vehicle, and drove him to Jefferson Hospital. Detectives James Sloan and John Geliebter sought a search warrant to search the residence at 5020 Portico Street for 'bloody clothing, ballistic evidence and any other items of evidentiary value.'

Trial Court Opinion, 12/18/14, at 5-6.

Thus, the affidavit stated Appellant had been shot and that his father met him at 5020 Portico Street, helped him dress, and transported him to the hospital. The parties recite these same operative facts in their briefs. Appellant's Brief at 8; Commonwealth's Brief at 3, 8. As such, we are able to address the legal question before us—whether the facts alleged in the affidavit support a finding of probable cause to believe police would recover evidence of a crime from a search of 5020 Portico Street.[4]

Based on the information set forth in the trial court's opinion, police sought a warrant to search Appellant's home for evidence related to the shooting, including bloody clothing and ballistic evidence. Appellant argues that police lacked probable cause to obtain a warrant to search 5020 Portico Street because the warrant did not establish a connection between the shooting and that address. He relies on a single case, **Way**, in which police followed the defendant from the site of a drug transaction to his private

---

[4] The Commonwealth notes the absence in the record of Appellant's motion to suppress and the absence of the suppression hearing transcript. Since Appellant's argument presents a question of law based entirely upon the contents of the affidavit of probable cause, the absence of the motion and transcript does not hinder our review.

residence. *Way*, 492 A.2d at 1152. After arresting the parties to the drug transaction, police obtained a warrant for to search the residence. *Id.* at 1153. The appellant argued the affidavit contained insufficient facts to establish probable cause that police would find evidence of a crime at his residence. *Id.* at 1153. The *Way* Court found probable cause lacking: "The affidavit did not contain sufficient facts to believe that drugs would be found on the premises to be searched. Probable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home." *Id.* at 1154. Appellant argues *Way* is controlling because in that case, as here, the affidavit established no nexus between the crime under investigation and the defendant's home.

We conclude *Way* is inapposite. The *Way* Court concluded the affidavit established no link between the defendant's home and the crime under investigation. Instantly, the facts in the affidavit established a direct link between the location of the search and the crime under investigation. Specifically, Appellant's father met Appellant at his home at 5020 Portico Street and helped him dress before driving him to the hospital. Thus, the facts in the affidavit support the magistrate's finding that police had probable cause to believe a search of 5020 Portico Street would uncover evidence—in particular bloody clothing—related to the shooting under investigation. Contrary to Appellant's argument, therefore, the affidavit establishes a direct nexus between Appellant's home and the crime under

investigation. We observe that Rule 201 of the Rules of Criminal Procedure permits issuance of a warrant "to search for and to seize [. . .] property that constitutes evidence of the commission of a criminal offense." Pa.R.Crim.P. 201(3). Appellant's bloody clothing clearly constitutes evidence of the shooting under investigation. Appellant's first argument fails.

Next, Appellant argues the trial court erred in permitting the prosecutor to reference inadmissible hearsay evidence during the prosecutor's cross-examination of Appellant. Admission of evidence rests within the sound discretion of the trial court and we will reverse a trial court's decision only where it abuses its discretion. *Commonwealth v. Harty*, 918 A.2d 766, 776 (Pa. Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008). Furthermore, an evidentiary error does not warrant a new trial if the error was harmless. "[T]he Commonwealth has the burden of proving beyond a reasonable doubt that the error could not have contributed to the verdict[.]" *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007), *cert. denied*, *Moore v. Pennsylvania*, 555 U.S. 969 (2008). "An error may be deemed harmless, *inter alia,* where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Id.*

Appellant in his brief cites only Rules 801 and 802 of the Pennsylvania Rules of Evidence as authority for his argument. Appellant's Brief at 12-13.

Rule 801 defines hearsay an out of court statement offered in court as proof of the matter asserted. Pa.R.E. 801. Rule 802 provides that hearsay evidence is inadmissible except as prescribed by the Rules of Evidence. Pa.R.E. 802.

During the exchange in question, the prosecutor sought to confirm that Appellant lived at 5020 Portico Street. The transcript reflects the following:

Q. You said you moved out in 2009?

A. Yes.

Q. Between 2009 and 2010, did somebody come in and move into the bedroom?

A. I don't know.

Q. What bedroom did you live in when you lived there?

A. I had the back bedroom.

Q. Now, you had a driver's license at the time you were arrested – I'm sorry, taken to the hospital, correct?

A. No. I didn't have it on me. I have a driver's license, though.

Q. But your license read the address of 5020 Portico Street, correct?

A. I believe so.

Q. And when you were in the hospital, you said that was your address, correct?

A. I didn't say nothing.

Q. So you didn't tell anyone your address when you were in the hospital?

A.    I did not.  The officer asked me what happened.  I told him I got shot.  He said, 'Where at?'  I told him, and then I had—they put me under, and I went to sleep.

Q.    Would it surprise you to find out that other family members said that you lived there?

[Defense Counsel:]   Objection.   Your Honor, that's the worst variety of back door hearsay that one could possibly use.  If this were a jury, I would be asking for a mistrial.

[Prosecutor:]  Your Honor –

[Defense Counsel:]   Would it surprise you that other members of your family said—come on, Judge.

[Prosecutor:]   He's claiming he does not live there.  It's completely fair to impeach him with what other people said at this point.

[Defense Counsel:]  She is 110 percent wrong.

[Prosecutor:]  Your Honor, it's completely appropriate.

[Defense Counsel:]   Shall we brief it?  You don't want to brief it.

[Prosecutor:]   Your Honor, there is no need to.   Once someone testifies and chooses to testify, it's completely permissible to cross-examine them with other information as to whether or not they live there.

[Defense Counsel:]   Not other people's hearsay.   Other information, yes, but –

[Prosecutor:]   It's not being offered for the truth of the matter.  It's being offered to impeach and cross-examine this defendant.  It is not hearsay.  ]

The Court:  I'll let it in.

N.T. Trial, 6/2/11, at 45-47.

We need not examine the merits of the hearsay argument.  The record

reflects the Commonwealth introduced a substantial body of evidence

- 10 -

confirming that Appellant continued to live at 5020 Portico Street. Appellant admitted the address on his driver's license was 5020 Portico Street. The Commonwealth introduced bills addressed to Appellant that were found during the execution of the search warrant. Appellant stipulated to the admissibility of the affidavit of probable cause, and Appellant's brief confirms that the affidavit of probable cause alleged that Appellant's mother confirmed that she and Appellant lived at 5020 Portico Street. Appellant's Brief at 8. Appellant's father picked Appellant up at 5020 Portico Street on the day of the shooting. Police found male clothing in a bedroom at 5020 Portico Street.

In *Commonwealth v. Johnson*, 838 A.2d 663 (Pa. 2003) (*cert. denied*. *Johnson v. Pennsylvania*, 543 U.S. 1008 (2004)), our Supreme Court held that admission of hearsay evidence is harmless if it is cumulative of evidence already in the record. *Id.* at 674 (citing *Commonwealth v. Young*, 748 A.2d 166, 193 (Pa. 2000)). Instantly, the prosecutor's reference to Appellant's mother's statement was cumulative of much other evidence confirming Appellant's place of residence. Assuming without deciding the trial court erred in overruling Appellant's objection, the error was harmless beyond a reasonable doubt.

In summary, we have concluded that both of Appellant's assertions of error lack merit. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Ott joins the memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2016