J-S44005-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT KELLEY, JR. | : | |
| | : | |
| Appellant | : | No. 830 WDA 2018 |

Appeal from the Judgment of Sentence May 9, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011637-2017

BEFORE: SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.: FILED DECEMBER 10, 2019

Appellant, Robert Kelley, Jr., appeals from the judgment of sentence entered following his convictions of one count of carrying a firearm without a license and two counts of possession of a controlled substance.[1] We affirm.

The trial court summarized the factual history of this case as follows:

On May 11, 2017, at approximately 6:30 p.m., police officers with the City of Pittsburgh Bureau of Police initiated a traffic stop on a vehicle on the Bloomfield Bridge, at or near the intersection of Liberty Avenue. Officers stopped the subject vehicle after observing the vehicle change lanes abruptly without signaling, causing the operator of another vehicle to come to an abrupt stop in order to avoid striking the subject vehicle.

Upon initiating the traffic stop, officers approached the vehicle and spoke with the female operator and the male front seat passenger, who was later identified as [Appellant]. While speaking with the occupants of the vehicle, officers detected an odor of marijuana emanating from the vehicle and observed that

_____

[1] 18 Pa.C.S. § 6106 and 35 P.S. § 780-113(a)(16), respectively.

[Appellant] appeared to be very nervous. Based upon these observations, officers directed [Appellant] to exit the vehicle, at which time they conducted a pat down of [Appellant's] person. During the pat down, officers discovered a firearm in [Appellant's] right front pocket. [Appellant] was subsequently taken into custody for possession of the firearm. During a subsequent search of the vehicle, police recovered two folded pieces of paper containing an unknown powdered substance. Concerned that the substance might pose a danger to police and the public, officers asked [Appellant] if he could identify the substance inside of the folded pieces of paper. [Appellant] advised officers that the substance was heroin, and was thereafter charged with one count of possessing a firearm without a license and two counts of possession of a controlled substance.

Trial Court Opinion, 2/14/19, at 2-3.

On December 15, 2017, Appellant filed an omnibus pretrial motion seeking to suppress physical evidence and Appellant's oral statements to police. The trial court held a suppression hearing on March 20, 2018. Thereafter, the parties filed briefs with the trial court. On May 9, 2019, prior to the commencement of a nonjury trial, the trial court denied Appellant's motion to suppress. At the conclusion of the nonjury trial, the trial court convicted Appellant of the crimes stated above. Immediately following the announcement of the verdict, the trial court sentenced Appellant to serve a term of probation of three years for the firearms conviction. The trial court imposed no further penalty on the possession of controlled substance convictions. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review, which we have reordered for purposes of disposition:[2]

[1.] Were the Appellant's convictions for illegal possession of a firearm and illegal possession of heroin based on insufficient evidence?

[2.] Did the trial court err in denying Appellant's Motion to Suppress physical evidence seized from the car in which he was a passenger, and incriminating statements he made to police during the traffic stop, given that the traffic stop was illegal from its inception, the seizure of Appellant was unlawful, the search of the car was not justified by a search warrant nor any exception to the search warrant requirement, and his statements were not preceded by Miranda[3] warnings but were preceded by an illegal arrest?

[3.] Were the Appellant's convictions for illegal possession of a firearm and illegal possession of heroin against the weight of the evidence given that the Commonwealth failed to show that Appellant had actual or constructive possession of the contraband, where the heroin was found in a car in which the Appellant was but a passenger?

Appellant's Brief at 10.

Appellant first argues that there was insufficient evidence to support his convictions. Appellant's Brief at 42-43. Appellant claims that the Commonwealth failed to prove that the gun in his possession was carried in a concealed manner. Id. at 43. In addition, Appellant alleges that the

_____

[2] We address Appellant's challenge to the sufficiency of the evidence first because he would be entitled to discharge if the evidence was insufficient to support the verdict. See Commonwealth v. Toritto, 67 A.3d 29, 33 (Pa. Super. 2013) (stating "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first").

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Commonwealth failed to establish that he was in constructive possession of the narcotics discovered in the automobile. Id.

We observe that "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to [Rule] 1925. [As a general rule, a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005) (quoting Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998)). "If [an appellant] wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." Commonwealth v. Manley, 985 A.2d 256, 262 (Pa. Super. 2009). See also Commonwealth v. Williams, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (finding waiver of sufficiency of evidence claim where the appellant failed to specify in Rule 1925(b) Statement the elements of particular crime not proven by the Commonwealth).

Appellant's Rule 1925(b) statement at paragraph nine asserts: "Further, there was insufficient evidence to sustain [Appellant's] convictions." Appellant's Rule 1925(b) Statement, 7/16/18, at 3. Appellant's non-specific claim challenging the sufficiency of the evidence fails to specify what elements of which crimes were allegedly not proven by the Commonwealth. Consequently, Appellant waived this claim on appeal. Castillo; Lord; Manley.

Appellant next argues that the trial court erred in denying his motion to suppress evidence. Appellant's Brief at 14-37. Appellant contends that both the physical evidence seized during the traffic stop as well as his statements made to police during the stop should have been suppressed. Appellant presents four sub-issues as support for this issue. Appellant asserts that the traffic stop was improper. Id. at 14-20. He further alleges that the police lacked probable cause to place him under arrest. Id. at 20-28. In addition, Appellant claims that the search of the vehicle was illegal. Id. at 28-33. Finally, he contends that his statements to police should have been suppressed because they were involuntary and inadmissible. Id. at 33-37.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to

the evidentiary record that was created at the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013).

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H). At a suppression hearing, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." Commonwealth v. Galendez, 27 A.3d 1042, 1046 (Pa. Super. 2011) (quoting Commonwealth v. Culp, 548 A.2d 578, 581 (Pa. Super. 1988)).

We first consider Appellant's claim that the evidence should have been suppressed because the police improperly conducted a traffic stop of the vehicle in which he was an occupant. Appellant's Brief at 14-20. Appellant baldly asserts that the stop of the vehicle was illegal because it was not based upon a motor vehicle violation, but was the result of racial profiling. Id. at 14-19.

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. Commonwealth v. Beasley, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> [s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

Commonwealth v. Acosta, 815 A.2d 1078, 1082 (Pa. Super. 2003) (en banc).

"The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code [("MVC")] is a question of law, over which our scope of review is plenary and our standard of review is de novo." Commonwealth v. Holmes, 14 A.3d 89, 94 (Pa. 2011). The MVC provides the following statutory authorization for a police officer to stop a motor vehicle:

> Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

However, this Court has explained the following:

> [Section 6308(b)] requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the [MVC] violation. However, in Commonwealth v.

Feczko, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc), appeal denied, 611 Pa. 650, 25 A.3d 327 (Pa. 2011), this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [MVC] violation." In Feczko, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. Id. at 1286. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. Id. Importantly, the officer did not testify that the stop was based on suspicion of DUI. Id. The defendant was convicted of DUI and a [MVC] violation, and argued on appeal that the vehicle stop was illegal. Id. at 1287.

This Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the [MVC]." Id. at 1289 (citing Commonwealth v. Sands, 887 A.2d 261, 270 (Pa. Super. 2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. Id. Therefore:

> a vehicle stop based solely on offenses not "investigable" cannot be justified by a mere reasonable suspicion, because the purposes of a Terry[1] stop do not exist - maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.
>
> [1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[Feczko, 10 A.3d] at 1290 (quoting Commonwealth v. Chase, 960 A.2d 108, 116 (Pa. 2008)).

Commonwealth v. Busser, 56 A.3d 419, 423 (Pa. Super. 2012) (footnote in original). Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely

inference.  Commonwealth v. Lindblom, 854 A.2d 604, 607 (Pa. Super. 2004).

The MVC addresses use of signals for turning and movement on the roadway as follows:

§ 3334. Turning movements and required signals

(a) General rule.--Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S. § 3334(a).  We have held that a police officer must possess probable cause in order to effect a stop for a violation of Section 3334.  See Commonwealth v. Spieler, 887 A.2d 1271, 1275-1276 (Pa. Super. 2005) (holding police officer had probable cause to stop a defendant for violation of Section 3334 where a defendant moved to and from right-hand to left-hand lane without using appropriate signals).

Our review of the record reflects that the police possessed probable cause to stop the vehicle in which Appellant was a passenger for a violation of the MVC.  At the suppression hearing, Officer Michael Nowe, a City of Pittsburgh police officer, offered testimony.  N.T., 3/20/18, at 4-22. Officer Nowe stated that at 6:00 p.m. on May 11, 2017, he was driving on the Bloomfield Bridge in Pittsburgh when he observed the subject vehicle cross lanes on the bridge without employing its turn signals.  Id. at 5-7. Officer Nowe explained his reasons for stopping the vehicle:

Q. Okay. As you are merging onto the Bloomfield Bridge in the left-hand lane, that's when this vehicle did what?

A. It entered into the right lane without using a turn signal.

Q. Okay. Was there anything that drew this particular incident to your attention?

A. They did it so abruptly. And so the vehicle behind them almost hit the rear end of their vehicle, then slammed on the brakes.

Q. So you observed the vehicle that was ahead of you, this Mercury, swerving to the right lane without using a signal; is that accurate?

A. Correct.

Q. So the vehicle that was behind them in the right-hand lane had to brake suddenly to avoid a collision?

A. Correct.

Q. All right. So you then initiated a traffic stop; is that correct?

A. Yes, sir.

Id. at 7-8 (emphases added).

This testimony is sufficient to establish the probable cause necessary to stop the vehicle for a violation of Section 3334(a) of the MVC. Thus, because Officer Nowe articulated facts at the suppression hearing that amounted to probable cause, we conclude that the stop of the vehicle was lawful. Accordingly, the trial court did not err in denying Appellant's motion to suppress evidence obtained following the legal stop of the vehicle.

Furthermore, we observe that Appellant claims that the pretextual nature of the stop is supported by the fact that the police never ticketed the driver for the MVC offense. Appellant's Brief at 19-20. Despite Appellant's suggestion to the contrary, the fact that the police did not subsequently charge the driver of the vehicle with an MVC violation does not support his argument that the violation was a pretext for the stop. "The issuance of a citation by an officer for a violation of the [MVC] is a matter within the sole discretion of that officer." Spieler, 887 A.2d at 1275. The decision not to prosecute a defendant for a MVC violation for which police originally stopped the vehicle does not vitiate the legality of a stop originally supported by either probable cause or reasonable suspicion. See id. at 1275-1276 (defendant charged with DUI but not the MVC violations for which he was originally stopped). Here, Officer Nowe testified that he did not give the driver a ticket for failing to use a turn signal, but indicated that he gave her a verbal warning. N.T., 3/20/18, at 15. Therefore, we conclude that Appellant's argument in this regard does not support his claim that the stop of the vehicle was based upon pretext.[4]

_____

[4] We note that Appellant also asserts that "video was made of the encounter from the cameras mounted in the officers' vehicle. The targeted vehicle did not engage in any improper lane change as the officers claimed." Appellant's Brief at 20. Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. Commonwealth v. Kleinicke, 895 A.2d 562, 575 (Pa. Super. 2006) (en banc). The ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon

In conclusion, the record establishes that the police possessed probable cause to stop the vehicle for a violation of the MVC. Therefore, the stop of the vehicle was proper and Appellant's contrary claim lacks merit.

Appellant next asserts that the police lacked probable cause to arrest him. Appellant's Brief at 20-28. Appellant claims that he was "immediately handcuffed" and did not believe he was free to leave. Id. at 22. Appellant further contends that the odor of marijuana, which the officers noticed, does not establish probable cause to justify his arrest. Id. at 23. In addition, Appellant posits that the firearm discovered on his person did not justify his seizure because the gun was discovered after he was seized. Id. at 27-28.

We will first consider whether Appellant, when he was asked to exit the vehicle and handcuffed, was under arrest or subjected to an investigative detention. In reviewing this portion of Appellant's claim, we are mindful of the following precepts:

_____

the appellate courts. Commonwealth v. Preston, 904 A.2d 1, 7 (Pa. Super. 2006) (en banc).

Upon review of the certified record before us, it is obvious that the video in question was not transmitted to this Court. In an effort to address this issue, we have taken the lenient approach and directed the Superior Court Prothonotary to contact the clerk of courts of the Allegheny County Court of Common Pleas to ascertain whether the video inadvertently remained with the lower court. The Allegheny Court of Common Pleas Clerk of Courts informed our Prothonotary that the video in this matter was not made a part of the certified record. Therefore, Appellant failed to ensure that the complete record is before this Court. Accordingly, because we cannot examine the claim concerning what appears on the video, our review is hampered, and we are constrained to deem this issue waived on appeal.

> "An arrest is defined as any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest. . . . The test is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized."

Commonwealth v. Butler, 729 A.2d 1134, 1137 (Pa. Super. 1999) (quoting

Commonwealth v. Rodriquez, 614 A.2d 1378, 1384 (Pa. 1992)).

We have further explained:

> During a traffic stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." "[I]f there is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions."

> Moreover, it is well-established that "when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car." See Commonwealth v. Pratt, 930 A.2d 561, 564 (Pa. Super. 2007) (noting that "following a lawful traffic stop, an officer may order [] the driver … of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot.").

> Furthermore, for their safety, police officers may handcuff individuals during an investigative detention.

Commonwealth v. Harris, 176 A.3d 1009, 1020-1021 (Pa. Super. 2017)

(certain citations omitted). "Because the level of intrusion into a person's

liberty may change during the course of the encounter, we must carefully

scrutinize the record for any evidence of such changes." Commonwealth v.

- 13 -

Blair, 860 A.2d 567, 572 (Pa. Super. 2004) (citing Commonwealth v. Strickler, 757 A.2d 884 (Pa. 2000)).

Our review of the record reflects that, contrary to Appellant's assertion that he was immediately arrested when the vehicle was stopped, he was not asked to exit the vehicle until approximately ten minutes after the automobile was stopped. Specifically, at his suppression hearing, Appellant offered the following testimony:

Q. Okay. Now, both of the plainclothes officers, did they approach the car also?

A. Yes.

Q. How soon afterwards was [the driver] taken out of the car?

A. I would say about five minutes.

Q. And how long was she out of the car before you were taken out of the car?

A. I would say approximately about five minutes.

Q. Okay. Now, is the car window down and are you being questioned by the undercover officer that is on your side of the car?

A. Yes, ma'am.

Q. And can you tell the Court what he is asking you[?]

A. He was asking me where I was from, where I lived where I worked, where we were going, where we were coming from.

N.T., 3/20/18, at 51. This testimony from Appellant belies his current allegation that he was immediately arrested upon the stop of the vehicle.

Moreover, the following testimony offered by Officer Devin McGee of the Pittsburgh Police establishes that Appellant was not immediately asked to exit the vehicle. Rather, police asked the passengers to exit after Appellant admitted that there was marijuana in the automobile.

Q. Let me phrase it this way. Did either of you, either the officers, make a statement to [Appellant] about the odor that you detected?

A. Yes.

Q. What was [Appellant's] response?

A. That there was some in here somewhere.

Q. What did you understand that to mean?

A. That there was marijuana in the vehicle somewhere.

Q. And you heard him say that?

A. Yes.

Q. Okay. What did you do at that point?

A. I believe we waited for Officer Nowe to come back and had the passengers exit the vehicle.

Q. And why did you take that step?

A. The odor of marijuana in the vehicle.

Q. So was it your intention to search the vehicle for marijuana at that point?

A. Yes.

Q. Did you or Officer Weight perform a pat down of any of the vehicle's occupants?

A. I believe I did on the driver and Officer Weight did on the passenger, [Appellant].

N.T., 3/20/18, at 25-26 (emphases added). Upon review of this testimony, we are satisfied that Appellant was not placed under arrest as he claims, but was subjected to an investigative detention precipitated by the detection of the odor of marijuana in the vehicle.

To effectuate an investigative detention, an officer is required to have reasonable suspicion that unlawful activity was in progress. As we explained in Commonwealth v. Walls, 53 A.3d 889 (Pa. Super. 2012),

> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

Id. at 893 (quoting Commonwealth v. Gutierrez, 36 A.3d 1104, 1107-1108 (Pa. Super. 2012)). Therefore, we will next consider whether the police possessed the requisite reasonable suspicion to conduct an investigative detention.

Our review of the record reflects that the police possessed reasonable suspicion that unlawful activity was in progress. Specifically, Officer McGee indicated that there was an odor of marijuana emanating from the vehicle. N.T., 3/20/18, at 25. As previously stated, Officer McGee testified that when he asked Appellant about the odor of marijuana that was detected, Appellant replied that "there was some in here somewhere." Id. at 25-26. In addition,

Appellant offered the following pertinent testimony at the suppression hearing:

> Q. Now did [the officer] ever ask you about marijuana in the car or do you tell him that there's marijuana in the car?
>
> A. He did ask me if there was anything in the car, marijuana. I said I do not know, there might be. I wasn't sure.

Id. at 53 (emphasis added).

The totality of these facts, in the knowledge of the officers at the time, was sufficient to establish reasonable suspicion of criminal activity necessary to detain Appellant. Thus, because the police officer articulated facts at the suppression hearing that would give rise to a reasonable suspicion of criminal activity, which were supported by Appellant's testimony, we conclude that the investigative detention was lawful.

Appellant next contends that the police search of the vehicle was illegal because it was conducted without a search warrant. Appellant's Brief at 28-33. Appellant further asserts that none of the exceptions to the search warrant requirement applies. Id.

Concerning a warrantless search of a vehicle, Pennsylvania law is "coextensive" with federal law under the Fourth Amendment of the United States Constitution. Commonwealth v. Gary, 91 A.3d 102, 120 (Pa. 2014) (plurality). In Gary, a plurality of our Supreme Court held that "[t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is

required." Id. at 138. Thus, we must determine whether the officer had probable cause to search Appellant's vehicle.

Probable cause exists where the facts and circumstances within an officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has committed or is committing an offense. Commonwealth v. Runyan, 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted). "The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." Id. The well-established standard for evaluating whether probable cause exists is consideration of the "totality of the circumstances." Id.

Our review of the certified record reflects that, under the totality of the circumstances, the police possessed probable cause to search the vehicle in which Appellant was a passenger without a warrant. Specifically, Officer McGee testified that he detected that the vehicle had an odor of marijuana. N.T., 3/20/19, at 25. When questioned about the odor of marijuana, Appellant indicated that "there was some in here somewhere." Id. at 25-26. Appellant was then detained and subjected to a search of his person, which revealed that he was carrying a concealed firearm in his front right pants pocket. Id. at 28. Under the totality of these circumstances, we conclude that the suppression court had a sufficient basis to find that the police possessed probable cause to believe that Appellant had committed or

was committing an offense. Hence, pursuant to Gary and Runyan, the warrantless search of the vehicle was proper.

Appellant last challenges the trial court's denial of his motion to suppress by arguing that his statements made to police were involuntary and inadmissible. Appellant's Brief at 33-37. Appellant claims that he was improperly questioned and made incriminating statements without having received his Miranda warnings. Id.

It is well settled that Miranda is not implicated unless an individual is in custody and subject to interrogation. Commonwealth v. Umstead, 916 A.2d 1146, 1149-1152 (Pa. Super. 2007). In Umstead, this Court expressly rejected the appellant's assertion that Miranda warnings are necessary in every instance where an individual who is in police custody is questioned by a law enforcement officer "regarding a crime." Id. at 1152.

> It is a fundamental precept enshrined in the United States Constitution that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney.

Commonwealth v. Cruz, 71 A.3d 998, 1003 (Pa. Super. 2013) (citation omitted). A custodial interrogation occurs when there is a "questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." Commonwealth v. Clinton, 905 A.2d 1026, 1032 (Pa. Super. 2006) (citations and emphasis omitted). In determining whether police conduct is

the functional equivalent of custodial interrogation, our Supreme Court has noted that:

> the court must focus on a suspect's perceptions and give relevance to the officer's constructive knowledge. Such considerations were required by the [Supreme Court's] direction [in Rhode Island v. Innis, 446 U.S. 291, 301 (1980)] that the inquiry must look at the suspect's perceptions rather than the intent of the police. Moreover, a practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to an interrogation.

Commonwealth v. Gaul, 912 A.2d 252, 255 (Pa. 2006) (internal quotation marks omitted). See also Commonwealth v. Garvin, 50 A.3d 694, 698 (Pa. Super. 2012) ("Interrogation is police conduct calculated to, expected to, or likely to evoke admission."). In conducting this inquiry, we are mindful of the fact that "not every statement made by an individual during a police encounter constitutes an interrogation." Commonwealth v. Page, 59 A.3d 1118, 1131 (Pa. Super. 2013) (citation omitted). See also Garvin, 50 A.3d at 698 (not every statement made by an individual during a police encounter constitutes an interrogation). Moreover, this Court has long recognized that "[v]olunteered or spontaneous utterances by an individual are admissible even without Miranda warnings." Commonwealth v. Williams, 941 A.2d 14, 30 (Pa. Super. 2008) (citation omitted).

Our review of the record establishes that, during the search of the vehicle, police discovered small folded pieces of paper in the pocket of the passenger door. N.T., 3/20/18, at 29-30. Officer McGee testified that drugs

- 20 -

are often packaged in that manner. Id. at 30-31. The officer then offered

the following testimony:

> Q. So do you recall if it was you who asked [Appellant] what was in these [paper packets]?
>
> A. I can't remember.
>
> Q. Okay. Do you recall the reason for asking [Appellant] what was in these [paper packets]?
>
> A. Well, usually heroin and fentanyl is [sic] packaged like that and fentanyl is what's killing people, so we don't really want to touch it.
>
> Q Right.
>
> A. If someone knows what it is, I would rather know what it is. Regardless, it's going to go to the lab, but I don't want to touch it.
>
>           \*   \*   \*
>
> Q. Is it accurate to say it was a safety concern as to why you wanted to know what was in these packages?
>
> A. Correct.

N.T., 3/20/18, at 30-31.

Appellant offered the following testimony regarding the discussion with

police about the items discovered:

> Q. When the drugs are found during the search of the car, are you shown the drugs? Or were you told that there was drugs found?
>
> A. Yes, I was shown.
>
> Q. And who showed you the drugs?
>
> A. Officer McGee.

Q. Did Officer McGee or anybody else Mirandize you at that point?

A. No.

Q. And what did Officer McGee say to you?

A. He asked me if it was fentanyl.

Q. Did he ask you if it was heroin?

A. Yes.

Q. And did you tell him you didn't know?

A. I told him I wasn't sure.

Q. And did he continue to question you about the drugs?

A. He pretty much just said okay.

Q. At some point, based on your exchange with the police, did you then tell the police that the drugs were yours?

A. Yes, I did.

Q. Did you say everything in the car is mine?

A. Yes, I did.

Q. And you weren't Mirandized?

A. Yes, ma'am.

Q. Okay.

N.T., 3/20/18, at 55-56. Subsequently, on cross-examination, Appellant provided the following clarification:

Q. Did anyone ask you if the stuff in the car was yours?

A. No, sir.

Q. You just said that everything in the car is mine?

- 22 -

A. Yes, sir.

Id. at 56.

Upon review of this evidence, we are compelled to conclude that Appellant's comments to police regarding ownership of the contraband discovered in the vehicle were spontaneous comments and not the product of an interrogation. As set forth above, Appellant avowed that he was not asked whether the items discovered were his. Id. He further indicated that the acknowledgement of ownership was a voluntary statement. Id. Hence, the record supports our determination that the comment regarding ownership of the contraband was a spontaneous statement made by Appellant and not the product of an interrogation.

In summary, we conclude that each of Appellant's challenges to the admission of evidence lacks merit. Hence, the trial court did not err in refusing to grant Appellant's motion to suppress evidence.

Appellant last argues that the verdict of guilt was against the weight of the evidence. Appellant's Brief at 37-41. Appellant limits his argument to a claim that the weight of the evidence failed to establish that Appellant had constructive possession of the contraband discovered in the automobile. Id. at 40-41.

The threshold question for this Court is whether Appellant's weight issue has been preserved for our review. Pa.R.Crim.P. 607[5] and its comment instruct that in order to preserve for appellate review a claim that a verdict is against the weight of the evidence, the issue must be raised with the trial judge in a motion for a new trial either orally or in writing prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607. We reiterated in Commonwealth v. Gillard, 850 A.2d 1273, 1277 (Pa. Super. 2004), "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Id. at 1277 (citing Pa.R.Crim.P. 607, cmt). The Gillard Court concluded, "Rule 607 clearly requires that such a claim be raised initially by a motion to the trial court, and the failure to do so compels this Court to find the issue waived, even if it was ultimately addressed by the trial court in its Rule 1925(a) opinion." Gillard,

_____

[5] Pennsylvania Rule of Criminal Procedure 607 governs challenges to the weight of the evidence and provides, in relevant part, as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) Orally, on the record, at any time before sentencing;
> >
> > (2) By written motion at any time before sentencing; or
> >
> > (3) In a post-sentence motion.

Pa.R.Crim.P. 607(A).

850 A.2d at 1277 (citing Commonwealth v. Washington, 825 A.2d 1264 (Pa. Super. 2003)). See also Commonwealth v. Butler, 729 A.2d 1134, 1140 (Pa. Super. 1999) (holding that a challenge to the weight of the evidence is waived for failure to present the issue first to the trial court).

Here, Appellant never filed with the trial court an oral or written motion for a new trial prior to sentencing or a post-sentence motion challenging the weight of the evidence. Rather, Appellant raised his claim that the verdicts were against the weight of the evidence in his Pa.R.A.P. 1925(b) statement. Hence, we conclude that the issue challenging the weight of the evidence is waived. Pa.R.Crim.P. 607; Gillard, 850 A.2d at 1277.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/10/2019